UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARTIN COTTO COLON,

      Plaintiff,

v.                                   Case No:  6:14-cv-378-Orl-DNF

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## OPINION AND ORDER

Plaintiff, Martin Cotto Colon, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and Disability Insurance Benefits ("DIB").  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number) and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't. of Health & Human Servs*., 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *see* 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. §§ 1520(a)(4)(iv), 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use

of a vocational expert.  *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner.  *Doughty v. Apfel*, 245 F.3d at 1278 n.2.

### C.  Procedural History

On December 14, 2004, Plaintiff filed an application for a period of disability and DIB alleging disability beginning August 13, 2004.  (Tr. 325-28).  Plaintiff's application was denied initially on April 9, 2005, and on reconsideration on May 6, 2006.  (Tr. 158-66).  A hearing was held before Administrative Law Judge Bruce H. Zwecker on August 16, 2007.  (Tr. 109).  Administrative Law Judge Zwecker issued an unfavorable decision on December 27, 2007.  (Tr. 106-21).  On February 12, 2008, Administrative Law Judge Zwecker issued an amended notice of decision unfavorable.  (Tr. 123-30).  On March 20, 2008, Plaintiff requested review of the hearing decision, and on April 24, 2009, the Appeals Council remanded Plaintiff's case for further administrative proceedings consistent with their order.  (Tr. 132-34).

On August 19, 2009, a second administrative hearing was held before Administrative Law Judge Philemina Jones (the "ALJ" or "ALJ Jones").  (Tr. 72-103).  On February 25, 2010, the ALJ issued an unfavorable decision.  (Tr. 135-53).  Plaintiff requested review of the hearing decision and, on January 25, 2012, the Appeals Council again remanded Plaintiff's case for further administrative proceedings.  (Tr. 154-57).

On June 4, 2012, a third administrative hearing was held before the ALJ.  (Tr. 33-71).  On August 23, 2012, the ALJ entered her decision finding Plaintiff not disabled.  (Tr. 8-32).  On October 4, 2012, Plaintiff requested review of the hearing decision, which the Appeals Council

denied on January 23, 2014.  (Tr. 1-7).  Plaintiff initiated this action by filing a Complaint (Doc. 1) on March 7, 2014.

### D.  Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity during the period from his alleged onset date of August 13, 2004 through his date last insured of December 31, 2012.  (Tr. 14).  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: hepatitis C and diabetes mellitus with left hand neuropathy.  (Tr. 15).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in "20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."  (Tr. 16).

Before proceeding to step 4, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b), including carrying and lifting 20 pounds occasionally, 10 pounds frequently; and could sit stand and walk for 6 hours in an 8-hour day; he can perform fine and gross manipulations with his dominant right hand, can only occasionally use his left hand; and he can speak some English, although his predominant language is Spanish.  The claimant can read and write very little English.

(Tr. 17).  At step four, the ALJ found that Plaintiff is capable of performing his past relevant work as a drug abuse counselor.  (Tr. 22).  The ALJ concluded that Plaintiff was not under a disability at any time from August 13, 2004, through December 31, 2012, the date last insured.  (Tr. 23-24).

### II.    Analysis

Plaintiff raises two issues on appeal:  (1) whether the ALJ erred by failing to apply the correct legal standards to the medical opinions of record, and (2) whether the ALJ erred by failing to fully and fairly develop the record.  The Court addresses each issue in turn.

**a) Whether the ALJ erred by failing to apply the correct legal standards to the medical opinions of record**

Plaintiff argues that the ALJ erred by failing to state the weight he accorded the opinions examining physician Yunus Pothiawala, M.D., non-examining state agency consultant Murphy Keven, Ph.D., and non-examining state agency consultant Dominic Marino, Ph.D. (Doc. 19 p. 9-15).  Plaintiff contends the ALJ was required to state the weight he accorded these decision with particularity pursuant to the Eleventh Circuit's holding in *Winschel v. Commissioner of Social Security*, 631 F.3d 1176 (11th Cir. 2011).   Plaintiff contends that the opinions from Drs. Pothiawala, Keven, and Marino are extremely important to his case because they conflict with the ALJ's finding that Plaintiff did not have any severe mental limitations. (Doc. 19 p. 11, 13-14).

In response, Defendant argues Drs. Pothiawala, Keven, and Marino were not treating physicians, and the regulations do not impose an articulation burden on ALJs in evaluating the opinions of non-treating doctors.  (Doc. 20 p. 7).  In the alternative, Defendant contends that even if the ALJ erred in failing to articulate the weight he accorded the opinions of Drs. Pothiawala, Keven, and Marino, the error was harmless because the record fails to support any additional limitations connected to Plaintiff's mental health.  (Doc. 20 p. 9, 14-15).

In *Winschel*, the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor.  631 F.3d at 1178-79. The Eleventh Circuit explained that without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

Applying this rule of law, the Eleventh Circuit found that an ALJ had erred by failing to mention a treating doctor's medical opinion or to discuss pertinent elements of an examining physician's medical opinion, and the ALJ's conclusions suggest that those elements were not considered.  631 F.3d at 1179.  The Eleventh Circuit explained that "[i]t is possible that the ALJ considered and rejected these two medical opinions, but without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence." *Id.*

Contrary to Defendant's claim that an ALJ has no articulation burden with respect to non-treating doctors, a clear reading of *Winschel* shows that this is not the case.  The Eleventh Circuit did not limit the articulation requirement to only the opinions of treating sources, and found that an ALJ had erred by failing to "discuss pertinent elements of the *examining* physician's medical opinion." *Id.* (emphasis added).  Nevertheless, the Court does not find that *Winschel* requires an automatic remand for failure an ALJ's failure to articulate the specific weight given to a medical opinion where the ALJ's discusses the opinion at length and the ALJ's reasoning implicitly demonstrates the weight accorded the opinion.  With this in mind, the Court turns to the opinions of Drs. Pothiawala, Keven, and Marino.

The record reflects that Dr. Pothiawala performed a consultative psychological evaluation at the request of Disability Determination Services on March 16, 2005.  (Tr. 536-538).  Plaintiff reported that he was depressed and he did not have any interest or desire to do anything.  (Tr. 536).  Plaintiff reported experiencing sleeping difficulties as well as crying spells.  (Tr. 536).  Plaintiff reported no history of psychiatric treatment or hospitalizations, but reported taking Effexor, Klonopin and Xanax as prescribed by his primary care physician.  (Tr. 536).  Plaintiff reported the medication was "somewhat helpful." (Tr. 536).  Mental status examination revealed that Plaintiff

appeared to be moderately to severe despondent, as well as mildly anxious. (Tr.537). Dr. Pothiawala noted that Plaintiff seemed to present with low self-esteem and was expressing feelings of hopelessness. (Tr. 537). Dr. Pothiawala further noted that Plaintiff's "attention span, as well as concentration abilities were decreased to some extent." (Tr. 537). Dr. Pothiawala opined that Plaintiff's clinical condition was suggestive of dysthymia secondary to his physical problems. (Tr. 537). Dr. Pothiawala also opined that major depressive disorder needed to be considered as a differential disorder. (Tr. 537-38).

In her opinion, the ALJ discussed Dr. Pothiawala's opinion as follows,

> Dr. Yunus Pothiawala examined the claimant on March 17, 2005 at the request of the Connecticut Disability Determination Services. The claimant was complaining of feeling depressed during the examination. He also complained of low motivation, sleeping problems and crying spells. He reported having lost his job in August of the preceding year (2004), which caused him to feel depressed. He also reported feeling anxious and becoming easily upset. Physically, the claimant complained of pain in his back and of swelling in his legs, as well as numbness of his feet. He also complained of feeling chronically tired, secondary to diabetes. Psychiatrically, he reported no history of psychiatric hospitalizations or history of formal psychiatric treatments. However, he had been prescribed Flexor 3 months prior to the date of the examination. He was also taking Klonopin and Xanax, on a daily basis. The claimant stated that he was able to take care of himself and his basic needs. There were no major abnormalities noted in terms of the claimant's hygiene or dress.

> The Mental status examination performed by Dr. Pothiawala revealed an individual who was cooperative and mostly talking about feeling depressed. The claimant appeared to be moderately to severely despondent and mildly anxious. On examination, there were no signs of overt psychosis, looseness of associations or disorganized thinking. There were no active suicidal or homicidal ideations. He did have low self-esteem and was expressing feelings of helplessness. He had a depressed affect. His memory for past and recent events was considered fair. His attention span and concentration abilities were decreased to some extent. However, there were no signs suggestive of overt organic brain syndrome. He demonstrated insight into his situation and his judgment was considered fair. The claimant was diagnosed with dysthymia, secondary to his physical problems and job loss. (Exhibit 10F).

(Tr. 20-21).  The ALJ never specified the weight she accorded to Dr. Pothiawala's opinion.

In this case, the Court finds that the ALJ's failure to state the weight she accorded the opinion of Dr. Pothiawala does not warrant remand pursuant to *Winschel*.  Unlike the medical opinions that were ignored in *Winschel*, the ALJ addressed Dr. Pothiawala's opinion at length and the ALJ's decision clearly reflects that she considered this evidence in making her RFC determination and in concluding Plaintiff was not disabled.  Given the ALJ's finding at step two that Plaintiff's depression did not cause more than minimal limitations on Plaintiff's ability to work and the ALJ's discussion of Dr. Pothiawala's opinion at step four, it is clear that the ALJ accorded little weight to Dr. Pothiawala's opinion to the extent it describes limitations on Plaintiff's mental ability.  (Tr. 15).

The Court turns now to the opinions of state agency consultants Dr. Keven and Dr. Marino, who each completed a mental RFC assessment and a psychiatric review technique form after reviewing Plaintiff's record.  Dr. Keven completed the forms on March 30, 2005.  Dr. Keven found that Plaintiff suffered from a depressive syndrome characterized by anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; decreased energy; and difficulty concentrating or thinking.  (Tr. 541, 544).  Dr. Keven found that Plaintiff was moderately limited in his ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to interact appropriately with the general public and the ability to set realistic goals or make plans independently of others.  (Tr. 562-63).  Dr. Keven also indicated that Plaintiff had suffered one or two episodes of decompensation.  (Tr. 551).  Dr. Keven opined that Plaintiff retained the ability to

carry out two step instructions and maintain an ordinary routine at a reduced pace.  (Tr. 564).  Dr. Keven concluded that Plaintiff would "probably function better on concrete tasks than interpersonal ones until his depression is better controlled."  (Tr. 564).  Dr. Keven noted that Plaintiff's baseline level of functioning was high, but that "he is having difficulty making decisions in his own interest at this time."  (Tr. 564).

The record reflects that Dr. Marino completed his mental RFC assessment and psychiatric review technique form on April 7, 2006.  Dr. Mario found that Plaintiff suffered from a depressive disorder not otherwise specified and a history of substance abuse in remission.  (Tr. 676, 679, 684).  Dr. Marino found that Plaintiff was moderately limited in his ability to maintain concentration, persistence or pace; the ability to maintain attention and concentration for extended periods; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 673-674, 686).  Dr. Marino found that Plaintiff could understand, remember and carry out detailed instructions, but may sometimes be distracted when concentrating on a task that exceeded a two hour period.  (Tr. 675).  Dr. Marino found that Plaintiff can interact appropriately with supervisors, coworkers, and the general public in the execution of job responsibilities, and the claimant can adjust to routine changes on the job and can successfully handle obvious work hazards that may present themselves in the employment situation.  (Tr. 675).  Dr. Marino also found that Plaintiff can set reasonable goals independently.  (Tr. 675).

Here, although the ALJ failed to state the weight she accorded the opinions of Dr. Keven and Dr. Marino as required by *Winschel*, remanding this case for the ALJ to do so would serve no purpose.  As noted above, Dr. Keven and Dr. Marino opined that Plaintiff had only moderate mental limitations which do not conflict with the ALJ's RFC determination.  Dr. Keven opined

that Plaintiff retained the ability to carry out two step instructions and maintain an ordinary routine at a reduced pace and that his baseline level of functioning was high. (Tr. 564). Dr. Marino found that Plaintiff could understand, remember and carry out detailed instructions, but may sometimes be distracted when concentrating on a task that exceeded a two hour period. (Tr. 675). Dr. Marino found that Plaintiff can interact appropriately with supervisors, coworkers, and the general public in the execution of job responsibilities, and the claimant can adjust to routine changes on the job and can successfully handle obvious work hazards that may present themselves in the employment situation. (Tr. 675). Dr. Marino also found that Plaintiff can set reasonable goals independently. (Tr. 675). In this way, rather than conflict with the ALJ RFC findings, Dr. Keven and Dr. Marino's opinions support the ALJ's RFC determination. Significantly, the opinions of Dr. Keven and Dr. Marino were accorded significant weight by ALJ Jones and ALJ Zweker in the opinions that were later vacated by the Appeals Council on other grounds. (Tr. 116-17, 144).

In addition, not only do the opinions of Dr. Keven and Dr. Marino not conflict with the ALJ's RFC finding, they do not conflict with the ALJ's finding at step two that Plaintiff's depression was not severe. According to the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," but only that the ALJ considered the claimant's impairments in combination, whether severe or not. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). Here, the ALJ found that Plaintiff had the severe impairments of hepatitis C and diabetes mellitus with left hand neuropathy at step two. The ALJ proceeded to step three and found that Plaintiff did not have an "impairment or combination of impairments"

that met or equaled a listed impairment, demonstrating that the ALJ considered the combined effect of Plaintiff's impairments.  (Tr. 16-17).

While the ALJ did not specify the weight he accorded the opinions Drs. Pothiawala, Keven, and Marino, it would be inappropriate to remand under the facts of this case.  The Court will not disturb the ALJ's treatment of the medical opinions on appeal.

**b)  Whether the ALJ erred by failing to fully and fairly develop the record.**

On January 25, 2012, the Appeals Council entered an Order remanding Plaintiff's case back to the ALJ to, in part, "[o]btain updated medical evidence with respect to the claimant's impairments, including treating source records, if available.  Consider whether updated consultative examinations (physical and/or mental) are needed."  (Tr. 156).  After the Appeals Council remanded Plaintiff's case, Plaintiff submitted additional treatment records marked as Exhibits 29F through 39F.  (Tr. 777-987).  The ALJ did not order any consultative examinations to be performed after the case was remanded.

Plaintiff argues that the ALJ erred by failing to order further consultative examinations after the case was remanded by the Appeals Council on January 25, 2012.  (Doc. 19 p. 16-17). Plaintiff contends that the ALJ's adoption of the opinion of a state agency consultant's opinion dated March 22, 2005, was improper because it was rendered seven years prior to the third administrative hearing and Plaintiff had developed additional physical limitations since originally filing his disability application.  (Doc. 19 p. 16).

Defendant argues that Plaintiff has failed to show that a consultative examination was necessary for the ALJ to make an informed decision, and that he was prejudiced regarding the development of the record.  (Doc. 20 p. 17).  Defendant argues that the ALJ considered all of the evidence submitted by Plaintiff after the case was remanded, and that it is only speculation that a

consultative examination would reveal evidence that could possibly support his claim.  (Doc. 20 p. 17-18).

Because a hearing before an ALJ is not an adversary proceeding, an ALJ has a duty to fully and fairly develop the record.  *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981).  This duty includes ordering a consultative examination when such an evaluation is necessary to make an informed decision.  *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (citing *Ford v. Sec. of Health and Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981)).  Although the ALJ has a duty to develop the record, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record."  *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).

After this case was remanded, Plaintiff submitted over 200 pages of additional medical records.  (Tr. 777-987).  The ALJ addressed this newly submitted medical evidence as follows:

> The undersigned also has given careful consideration to the medical evidence submitted on appeal. (Exhibits 29F through 39F).  However, none of the medical evidence, laboratory testing, or opinions, justify altering the conclusions that the claimant is not disabled in accordance with the Social Security Act and the governing regulations.  The medical records from Nephrology Associates, Clinical Path Lab, and Ahmed Fawad, M.D., showed laboratory test reports indicating that the claimant was found with chronic hepatitis C, chronic kidney disease, hypertension, and diabetes mellitus. (Exhibits 34F, 35F, 36F, and 37F).  However, the medical records from Arvelys M. Torrellas, a Certified Physician Assistant, from January 1, 2009 through April 27, 2012 showed treatment aned medications for duodenal ulcer, esophagitis, colon polyps, kidney disease, bilateral lower extremity edema, diabetic neuropathy, obesity, hypertension, hyperlipidemia, and diabetic neuropathy with proteinuria.  The medications included Noval, Lantus, Vytorin, Cymbalta, Niaspan, and Levaza medications.  Nevertheless, the claimant was found essentially within normal limits.  (Exhibits 29F, 30F, 31F, 32F, 33F, and 39F).  On December 27, 2011, the physical examination was within normal limits, generally indicating no edema, no thrill, normal heart sounds, well nourished and no acute distress. (Exhibit 39F).  In Exhibit 38F, a residual

functional capacity assessment questionnaire addresses specific physical functional limitations. The responses in the questionnaire are extremely limiting in relation to the objective clinical findings of record. For example, it indicates that the claimant is not able to lift or carry even 10 pounds; and that he can only stand less than 2 hours, and sit about 2 hours in an 8-hour workday. The assessment, which include quite severe restrictions, concluded that the claimant is incapable of performing even low stress jobs, due to fatigue, depression, and anxiety. (Exhibit 38F). First, this assessment, although considered, is not from an acceptable medical source. He is not a doctor. Second, it is not consistent with the medical examinations, as discussed above, which while indicating some impairments, indicate mostly normal exams, including no edema, and that the claimant is in no acute distress. Significantly, the undersigned rejects these opinions and conclusions because they are not supported by a preponderance of the evidence.

(Tr. 21). The ALJ concluded that "none of the medical evidence, laboratory testing, or opinions, justify altering the conclusion that the claimant is not disabled in accordance with the Social Security Act and the governing regulations." (Tr. 21-22).

Here, Plaintiff fails to show with any specificity that he was prejudiced by the ALJ's decision not to order a consultative examination. Instead, Plaintiff makes the blanket claim that Plaintiff was "fifty-nine years old at the time of the hearing and had developed additional physical limitations since originally filing his disability application." (Doc. 19 p. 16). Plaintiff does not specify what those additional limitations are and fails to cite to any evidence that would support additional limitations. In fact, as Plaintiff makes clear in his Memorandum of Law, he does not contest the ALJ's rejection of the opinion of his treating physician's assistant, Ms. Torellas. (Doc. 19 p. 15). The ALJ's opinion makes clear that her decision was based on a review of medical evidence dating all the way through April 2012, thus taking into account any evidence that would support any additional limitations that Plaintiff may have developed since originally filing his disability application. Given this review, the Court finds that the ALJ did not err by not ordering a consultative examination after the case was remanded. Plaintiff failed to meet his burden of

providing evidence to support his allegations of disabling limitations.  Accordingly, the Court will affirm the ALJ's decision.

**III.    Conclusion**

The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 22, 2015.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties